

CORPORATION SERVICE COMPANY

# Notice of Service of Process

CZG / ALL
Transmittal Number: 6146332
Date Processed: 10/30/2008

| Primary Contact: | Ms. Susan Small<br>Assurant Group<br>260 Interstate North Circle NW<br>Atlanta, GA 30339-2111 |
|---|---|

| | |
|---|---|
| **Entity:** | American Security Insurance Company<br>Entity ID Number 1874436 |
| **Entity Served:** | American Security Insurance Company |
| **Title of Action:** | Gailand K. Brede vs. American Security Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Circuit Court for Roane County, Tennessee |
| **Case Number:** | 14168 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 10/30/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | Tennessee Department of Conerce and Insurance 10/21/2008 |
| **How Served:** | Certified Mail |
| **Plaintiff's Attorney:** | Anthony M. Avery<br>865-637-3035 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com



STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

October 27, 2008

American Security Insurance Company
2908 Poston Avenue, % C S C
Nashville, TN 37203
NAIC # 42978

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7008 1830 0000 6980 1298
Cashier # 5854

Re: Gailand K. Brede   V.   American Security Insurance Company

Docket # 14168

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Breach Of Contract Complaint was served on me on October 21, 2008 by Gailand K. Brede pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Roane County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Roane County
    P O Box 73
    Kingston, Tn 37763

IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

GAILAND K. BREDE        )

      Plaintiff        )
                  )
                  )

**COPY**

vs.                )    No.: *14168*

AMERICAN SECURITY INSURANCE  )
COMPANY                )
                  )

      **Defendant.**       )

&#9855; **ADA**
FOR ASSISTANCE CALL
**865-376-2193**

## SUMMONS

To the above-named **Defendant:** American Security Insurance Company    , **which can be served** through its Regisered Agent, TENNESSEE COMMISSIONER FOR THE DEPARTMENT OF COMMERCE & INSURANCE, 500 James Robertson Parkway, 5th Floor, Davy Crockett Tower, Nashville, Tennessee 37243

    You are hereby summoned and required to serve upon Plaintiff's Attorney, Anthony M. Avery The Farragut Building, Suite #600, 530 South Gay Street, Knoxville, Tennessee 37902 an answer to the Complaint herewith served upon you within 30 days after service of this Summons and Complaint upon you, exclusive of the day of service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the Petition.

    Issued and tested this *13* day of *Oct*_____, 2008.

                           *Angela Randolph*

                          Deputy Clerk

## NOTICE

    Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt with the clerk of the court, the list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt be law and do not need to be listed; these are trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

## RETURN

I received this summons on the ____ day of _____, 2008. I hereby certify and return that on the ____ day of _____, 2008, I ( ) served this summons and a complaint on Defendant , American Security Insurance Company at:_____

( ) failed to serve this summons within 30 days after its issuance because: _____
_____

_____
Process Server

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

GAILAND K. BREDE )

Plaintiff )

COPY

)

-vs- )

AMERICAN SECURITY INSURANCE COMPANY )

Defendant )

)

ADA
FOR ASSISTANCE CALL
865-376-2193

Circuit Case No. /4/6 8
Jury Trial Demanded

## COMPLAINT

Your Plaintiff sues the Defendant, and makes the following allegations:

(1) Plaintiff, Gailand K. Brede, is a citizen and resident of Roane County, Tennessee, formerly residing at 624 Buck Creek Road, Kingston, Tennessee 37763, but now residing at 107 Cripple Creek Road, Kingston, Tennessee

(2) Plaintiff and his wife, Jacqulyn C. Brede, formerly owned and possessed as tenants by the entirety a tract of real property of approximately 7.9 acres, improved with a dwelling, and of record at Deed Book H, Series 20, Page 632 in the Register's Office for Roane County, Tennessee and bearing Tax Parcel No. 069-82.02.

(3) Defendant, American Security Insurance Company, is a foreign insurance company, incorporated under the laws of the

Filed 10 - 13 20 08
ANGELA RANDOLPH Time
By D.C.

State of Georgia, licensed to do and doing business by the selling of insurance policies in the State of Tennessee, including Roane County.  The Defendant can be served through its Registered Agent for service of process, that being the Tennessee Commissioner for the Department of Commerce & Insurance, at 500 James Robertson Parkway, 5th Floor, Davy Crockett Tower, Nashville, Tennessee   37243.

(4)  Your Plaintiff formerly resided at his home at 624 Buck Creek Road.   On or about February 5, 2008, a severe weather storm caused serious damage to the house's roof, creating water leaks, damage to the interior ceilings, major electrical problems, some openings in the roof where the roofing material was ripped away, and extensive water damage to virtually all interior drywalls and floors.

(5)  In consideration of valuable monies paid by Plaintiff to Defendant as premiums, a policy of insurance was issued by the Defendant to the Plaintiff several years prior to February 5, 2008, and the Parties heretofore entered into a contract of insurance, that being designated by Defendant as Policy #SIF050512202, to protect Plaintiff against loss from the damage or destruction to his house located at 624 Buck Creek Road, Kingston, Roane County, Tennessee.

-2-

(6) The ownership interest of Plaintiff in said real property was formerly subject to a Deed of Trust and Note, with the mortgagee being named an additional loss payee on the Policy of Insurance, but as a consequence of a subsequent foreclosure, the Note has been satisfied in full and the Deed of Trust extinguished, such that your Plaintiff is the sole interested party with an insurable interest at the time of the loss.

(7) The Plaintiff continuously maintained the aforesaid Insurance Policy #SIF050512202 through the payment of numerous monthly premiums, up to the time of the loss of the insured property, such that the Insurance Policy constituted a contract of insurance in full force and effect between Plaintiff and Defendant at the time of the loss on February 5, 2008.

(8) A few days after the storm on February 5, 2008 tore holes in the roof, the rain started coming into the house and Plaintiff realized even more serious damages had been sustained during the earlier storm on the 5th than was initially apparent. As an emergency measure, Plaintiff placed large tarpaulins over the openings in the roof. Plaintiff and his wife, Jacqulyn C. Brede immediately contacted the Defendant through its Field Staff Adjuster and Agent, Jeff Amos, in Greenback, Tennessee, and made notification of the loss with claim under the Policy of

-3-

Insurance. Defendant's Agent Amos acknowledged Plaintiff's claim of loss, but stated it would take seven to ten days to process the claim.

(9) Agent Amos finally arrived at the insured premises on February 21, 2008, and made his initial assessment of the damage by actual physical inspection.

(10) In the time period between Plaintiff's notification of the loss and Agent Amos arriving at the insured property, rain was coming through the fireplace and other roof openings, resulting in water standing in the den, a closet, laundry room and the master bedroom. Also the flume over the kitchen cabinets was completely filled with water. Virtually all carpeting was engorged with water and had to be removed. Only one room was dry, and Plaintiff's entire family had to move into the small child's bedroom until other accommodations could be secured. On an almost daily basis, your Plaintiff positioned the tarpaulins to mitigate further damages. Plaintiff and his family attempted to clean the mold and mildew with bleach, all to no avail.

(11) Within a few days, most seams of the house of modular construction were separating, and noxious mold was growing in most areas of the house, including interior walls, ceilings, floors, and inside walls as well as the attic. Over half of the house had no electricity nor lighting, as many lighting fixtures

-4-

contained water. The kitchen sink collapsed to the floor. The
stench of the consuming mold and mildew caused Plaintiff's
Granddaughter breathing problems.

(12) Defendant, through its Agent Amos, was put on notice of
these problems by Plaintiff and his wife on numerous occasions.
Defendant Insurance Company's response, through its Agent Amos
was to instruct Plaintiff to place tarpaulins on the roof, and
wash the walls with bleach, while it was allegedly sending a
check for $ 4,461.50 to the (former) mortgagee, Household
Financial Center, Inc., instead of the Plaintiff for the needed
repairs. Additionally Agent Amos apologized for not getting to
the house for a damage appraisal sooner, and promised that
Defendant would be getting in touch with Plaintiff.

(13) Several weeks passed by without Defendant restoring the
house to a habitable condition, nor did the former mortgagee
rebuild the house. Your Plaintiff attempted to refinance the
mortgage on his home, but the condition of the house made a new
appraisal a useless expense and no refinancing was secured.
Your Plaintiff has no knowledge that Defendant ever actually sent
a check to the former mortgagee, and in any event, Defendant
never paid for a restoration of the house.

(14) On the 20th day of March, 2008, your Plaintiff and his
wife sent a handwritten Sworn Proof Of Loss by certified mail to

-5-

Defendant through its Agent Amos, demanding full replacement of the home due to the storm damage completely destroying the home. (Exhibit "A" attached hereto)

(15) On the 8th day of April, 2008, Agent Amos for the Defendant called Plaintiff and admitted that the subsequent catastrophic damage to the subject house was caused by Defendant's negligence in properly processing the claim.

(16) On the 25th day of April, 2008, Defendant's Agent Amos and some type of construction worker/estimator again inspected the subject house. In the presence of Plaintiff's wife, Agent Amos found the damage to the house to be far beyond his original appraisal, and the construction estimator stated complete replacement of numerous structures were necessary. Plaintiff's wife instructed Agent Amos to fix the home immediately.

(17) On the 12th day of May, 2008, Defendant sent a check in the amount of $ 4, 461.60 to your Plaintiff. This amount is allegedly computed upon a Repair/Replacement amount of $ 6,002.01 minus $ 1,040.41 for Recoverable Depreciation and $ 500.00 for the Policy's Deductible.

(18) On the 15th day of May, 2008, Defendant sent a check in the amount of $ 1,510.20 to your Plaintiff, with the annotation of Plaintiff being the insured and claimant under apparently the

-6-

subject Policy SIFSIF050512202. However the payee was the former mortgagee, HSBC Finance Corporation, and was already endorsed by an unknown agent of the payee, such that the check constituted bearer paper.

(19) Both of the aforesaid checks' proceeds, totaling $ 5,971.80 have been placed in Plaintiff's counsel's trust account awaiting final adjudication of this suit at law.

(20) Virtually all of Plaintiff's personal belongings were destroyed by the water damage to the house.

(21) By the middle of May, 2008, your Plaintiff and his family were forced to abandon the house as it was completely uninhabitable and constituted a threat to him and his family's health.

(22) On the 23rd day of May, 2008, a second Sworn Proof Of Loss and Demand for Payment by your Plaintiff under the insurance policy was sent to Defendant by certified mail. (Exhibit "B" attached hereto) In this second demand, a warning that the additional liability for Defendant's bad faith failure to pay promptly pursuant to T.C.A. § 56-7-105 would be sought in any subsequent suit at law against the Defendant.

(23) On the 23rd day of June, 2008, Agent Amos as the Field Staff Adjuster and representative of Defendant (referred therein to as "Assurant Specialty Property") sent a letter to counsel for

-7-

the Plaintiff acknowledging the receipt of the second proof of loss and payment demand, while absolutely denying any further liability for Plaintiff's loss of his insured home under the existent contract of insurance between the Parties, Policy # SIF050512202. (Exhibit "C" attached hereto)

## FIRST CAUSE OF ACTION

(24) Your Plaintiff realleges the allegations of ¶¶ 1 through 23 of the Complaint and further alleges:

(25) At all times relevant hereto, Plaintiff has fully complied with, and performed, each and every obligation required of him, including payment of insurance premiums for several years prior to the loss, under the contract of insurance existent between him as the insured party and Defendant as the property casualty insurance company under Policy # SIF050512202.

(26) In a timely fashion, the Plaintiff insured placed Defendant on notice of the storm damage to the house by numerous telephone calls and a written demand to Defendant's authorized agent, Jeff Amos, so that Defendant was fully apprised of Plaintiff's loss claim under the Policy of Insurance.

(27) Upon being unambiguously notified of a covered risk being claimed under the subject contract of insurance, Defendant

-8-

and its agent(s) only feigned a purported compliance of its contractual obligations, materially breaching the Defendant's covenants to insure the Plaintiff against loss of his house.

(28) Since Defendant failed to repair the house in a timely fashion, nor pay out the sustained loss, Plaintiff and his wife furnished Defendant with a Sworn Proof of Loss demanding full replacement of the home. Later a second Sworn Proof of Loss with Demand for Payment and notice that the bad-faith penalty for failure of the insurance company to pay promptly would be sought, was likewise sent to Defendant.

(29) After the loss, the Plaintiff performed all conditions required to be performed on his part, including his unsuccessful attempts to prevent further damage by covering the holes in the roof and cleaning with bleach the inside walls and ceilings, as specifically directed so to do by Defendant's Agent Amos.

(30) At all times relevant hereto, Defendant has repudiated any contractual liability under said Policy of Insurance, and still fails and refuses to pay Plaintiff for his contractually insured loss, except for a small repair payment of $ 5,971.80 belatedly paid to Plaintiff and held in trust by his counsel of record pending final adjudication of this action at law. Further Defendant has failed to provide Plaintiff with a copy of the subject contract of insurance at issue before the Court, designated by the Defendant as "SIF050512202", despite Defendant

-9-

asserting defenses claimed therein.

(31) Despite Plaintiff's performance of all contractual requirements, Defendant breached its contract of insurance to protect and indemnify Plaintiff from damage and/or loss to his house by its: failure to assess the loss in a timely and proper fashion; improper directives which caused further damage and destruction; knowing and willful failure to adequately repair or replace the insured household premises such that Plaintiff's home was placed in a pre-loss condition; failure to pay Plaintiff the full replacement value of the destroyed home covered by the Insurance Policy and within the Policy's stated limits of coverage; failure to pay for Plaintiff's loss of use of his home nor pay for temporary housing accommodations after the loss; failure to pay for adequate debris removal of the destroyed house; and retention of various monies as "Depreciation" when the Policy provides for payment of the actual cash value of the house immediately prior to the loss caused by the storm of February 5, 2008.

## SECOND CAUSE OF ACTION

(32) Your Plaintiff realleges the allegations of ¶ 1 through 31 of the Complaint and further alleges:

-10-

(33) The assigned field staff adjuster, Jeff Amos, as the designated agent of Defendant acting on its behalf, is a trained professional adjuster and was relied upon by the insured Plaintff to address all damage issues resultant to the insured premises as a result of the storm on February 5, 2008.

(34) Instead Defendant's Agent Amos intentionally and fraudulently prepared knowingly substandard, grossly low and incomplete estimates of the construction repairs needed to either repair or replace the insured home. As a trained adjuster for a large insurance corporation (Defendant American Security) he knew, or should have known upon reasonable inquiry and due diligence, that the water damage was already present and causing irreversible deterioration of all significant structures of the house, and that a simple roof repair would not place Plaintiff's house in a pre-loss condition.

(35) When Agent Amos inspected the house as a loss claim for the second time, even the construction estimator that he brought with him acknowledged the widespread water damage, and told said Agent, your Plaintiff and his wife, that complete replacement of all drywalls, floors and ceilings was necessary to return the house to its pre-loss condition and successfully abate the toxic mold and mildew, in addition to a new roof.

(36) It should have been, and was, readily apparent that a complete rebuild or replacement of the insured house was actually

-11-

in order, as the damage was already done and would certainly get much worse, such that the insured house would be uninhabitable in a month or less, as the interior of all building structures was irreparably damaged by water, mold and mildew.

(37) An insurance adjuster's duty is to take control of a loss situation on behalf of his insurance company principal, and both Agent Amos and Defendant knew what contractual terms under the insurance policy (SIF050512202) were providing coverage for Plaintiff's claimed loss. Either Agent Amos or the Defendant should have provided a copy of the aforementioned contract of insurance when it was obvious that Plaintiff did not possess a personal copy of the same, such that coverage provisions of the policy could be pointed out to your Plaintiff. Instead Defendant provided no copy of the subject insurance policy, and after contacting the former mortgagee, simply proffered a knowingly false appraisal of the loss, and refused to pay Plaintiff the value of his loss, as Defendant and its agents surmised that the home would be lost to a foreclosure of the former mortgage anyway.

(38) At all times relevant hereto, Defendant has intentionally failed to perform its contractual obligations through the use of false and deceptive oral and written statements so as to deceive Plaintiff into only accepting a small pittance of the actual monies required to rebuild or

-12-

replace the insured house, after having received years of
insurance premiums for loss coverage.

(39) In violation of the Tennessee Consumer Protection Act,
T.C.A. §§ 47-18-101 et seq., Defendant has: engaged in unfair
and deceptive acts and practices affecting the conduct of its
insurance business in relation to your Plaintiff and the Parties'
contract of insurance; and knowingly and intentionally
represented that only certain substandard and insufficient
replacements and repairs were needed when total replacement of
the destroyed house was the only proper conclusion, and thus only
paid, out an extremely small fraction of the actual replacement
costs as contractually required, leaving Plaintiff homeless.

## DAMAGES

(40) Immediately prior to the storm damage, the described
home dwelling insured under the Policy of Insurance had a market
value as shown by the insurance policy ($ 90,000), irrespective
and apart from the 7.9 acre tract it constituted an improvement
thereon, and immediately after the loss claim was made known to
the Defendant, the described home dwelling had a market value of
$ 0, and would additionally require at least another $ 5,000 to
remove the debris from the real property. Plaintiff lost over
$ 7,300 in personal property that was destroyed by the storm
damage. And finally Plaintiff and his family had to secure other

-13-

housing accommodations by renting another home as the house at
624 Buck Creek, Kingston, Roane County, Tennessee was destroyed
and uninhabitable.

(41) As a direct result of Defendant's:   willful breach of
contract of insurance;   bad faith refusal to pay promptly as
the obligated insurance carrier under a contract of insurance;
and fraudulent and deceitful business practices in violation of
the Tennessee Consumer Protection Act of 1977;   Plaintiff has
sustained numerous foreseeable, consequential, statutory and
special damages, and makes a demand for an award of each of these
in addition to compensatory damages, to include:

-$ 90,000 for the **Loss of the Insured Home;**

-$ 5,000 for the **Removal of Debris** from the destroyed
 home;

-$ 8,000 for the **Loss of Use** of the insured home from
 the date of the loss until the institution of this
 suit at law;

-$ 7,300 for the **Loss of Personal Property** inside the
 destroyed house;

-an **Additional Liability** of up to 25% of the policy
 limits of liability stated hereinabove which was not
 paid promptly over to the Plaintiff upon demand and
 notice through a Sworn Proof of Loss, pursuant to
 T.C.A. § 56-7-105;

-**Treble Damages** as adjudicated by the Trial Court
 pursuant to T.C.A. § 47-18-109;

-**Costs** of this cause;    and

-Such other damages and further relief as this

-14-

Honorable Court and/or the Jury as the trier of
fact may deem appropriate.

(42) None of the aforementioned damages would have been
incurred by your Plaintiff, nor demand for now being made, had
Defendant through its agents, promptly and diligently performed
the insurance contract loss protection coverage as bargained for
and agreed upon by the Parties for valuable monies paid as
monthly premiums by the Plaintiff over to the Defendant.

WHEREFORE, PREMISES CONSIDERED, your Plaintiff demands a
Jury to try this suit at law.

**RESPECTFULLY SUBMITTED,**
**GAILAND K. BREDE, PLAINTIFF**

BY:

Anthony M. Avery BPR #01292
Counsel for Plaintiff
The Farragut Building
Suite # 600
530 South Gay Street
Knoxville, Tennessee    37902
(865) 637-3035

COST BOND

In acknowledge myself as Surety for all costs of this cause.

SURETY

-15-

Sworn Proof of Loss.           3/20/08

To Whom it may Concern,

We the Brede's at 624 Buck Creek Road. claim our home is completely destroyed.
Due to several major storms that has caused severe roof damage, including leaks to drywall causing major electrical problems.
Ceiling damage and our major concern of mold is visable everywhere. accumulated damage to walls, floors, fireplace ect. has caused us to do a Proof of Loss for the full replacement of our home. Mold in the inusllation is a great concern.

Sincerely,
Garland + Jaequlyn Brede
Household Finance Corp.
Acct # 847844001040036
SS# 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

Susan D Jewett
exp. 5-15-2010

SUSAN D. JEWETT
STATE
OF
TENNESSEE
NOTARY
PUBLIC
ROANE COUNTY

Exhibit "A"

# ANTHONY M. AVERY
## ATTORNEY & COUNSELOR AT LAW

THE AM SOUTH BUILDING, SUITE 1219
507 SOUTH GAY STREET
KNOXVILLE, TENNESSEE 37902
OFFICE (865) 637-3035 · FAX (865) 524-4664

May 23, 2008

American Security Insurance Company
11222 Quail Roost Drive
Miami, Florida    33157-6596

CERTIFIED MAIL

Re:    Sworn Proof Of Loss and Demand for Payment
       Policy of Insurance # SJF 050512202

Dear Sirs:

As your Agents may remember my Client Gailand K. Brede put your Company on notice of the severe roof and wall damage sustained by he and his family's home at 624 Buck Creek Road, Kingston, Roane County, Tennessee, on February 5, 2008.  For some unknown reason, coverage under the Policy was denied, delayed, etc., and by early March, deterioration and mold had quickly rendered the home uninhabitable and thus destroyed.  The actual cash value of the dwelling at the time of the loss was $ 60,000.  Further, certain items of personal property contained in the dwelling were destroyed, including:  sectional with two loungers;  dining room table with four chairs, made of mahogany;  wedding dress;  numerous pictures, many of deceased family members;  all light fixtures;  and all clothing in the rearmost closet;  with an actual cash value of $ 7,300.

Thus the total demand under the Contract of Insurance is $ 57,300.

My Client once again makes demand for payment in full of the total loss as shown.  Keeping in mind the provisions of the Additional Liability Upon Insurers For Bad-Faith Failure To Pay Promptly under T.C.A. § 56-7-105, and the Tennessee Consumer Protection Act of 1977 under T.C.A. §§ 47-18-101 et seq., litigation under these statutes shall be immediately forthcoming.  On behalf of my Client, we request your sincere reconsideration and favorable response by sending a check and a proposed release to my office.



Exhibit "B"

ANTHONY M. AVERY

ATTORNEY & COUNSELOR AT LAW

THE AM SOUTH BUILDING, SUITE 1219
507 SOUTH GAY STREET
KNOXVILLE, TENNESSEE 37902
OFFICE (865) 637-3035 • FAX (865) 524-4664

Thank you for your time and efforts concerning this serious matter.

Respectfully Submitted,

STATE OF TENNESSEE

COUNTY OF ROANE

The undersigned, Gailand K. Brede, being duly sworn, states that he has read this statement, that the contents are true to the best of his knowledge, and his signature constitutes his free act and deed.

GAILAND K. BREDE

Sworn to and subscribed before this 23rd day of May, 2008.

NOTARY PUBLIC

My Commission Expires:

December 5, 2009



11222 Quail Roost Drive
Miami, FL 33157-6596
T 305.253.2244
F 305.252.6987
www.assurant.com

June 23, 2008

Anthony M. Avery
Attorney & Counselor at Law
The AM South Building
Suite 219
507 Gay Street                    **CERTIFIED/RETURN RECEIPT REQUESTED**
Knoxville, TN 37902

Re:        Sworn Proof of Loss Demand for Payment
           Policy Number:      SIF050512202
           Claim Number:       00100530046
           Policy Holder:      HFC
           Additional Insured: Gailand K Brede

Mr. Avery,

This will acknowledge receipt of your letter dated May 23, 2008, whereby you have demanded payment
under the above policy number in the amount of $67,300.00.

Based on our information in our file, we must reject the Proof of Loss due. The damages to the risk do not
warrant it to be a total loss.

Enclosed are documents for your review that should explain our process of payments for damages to the
risk as a result of water damages from wind damage to the roof with a date of loss of 02/05/2008.

We received notice of this claim on February 13, 2008 and the undersigned, and Field Staff Adjuster
completed inspection of the damages on February 21, 2008. Our inspection of the roof revealed that the
roof was constructed of a roll roofing material, which was unusual for this type of risk, as the risk was
initially manufactured with three tab shingles. However, according to the additional insured, Gailand
Brede, he had roll roofing put over singles when someone had recommend this type roofing material. Our
inspection of the roof on February 21, reveals there was wind damage to the majority of the roof,
resulting in water damage to the interior ceilings and walls in a few of the rooms.

We completed our scope of damages and arrived at a repair cost of $6,002.01, which included replacing
the roof with roll roofing material and repairing the interior. A check was issued to the lender, HFC and
the additional insured, Gailand K Brede. On a later date, the additional insured called and advised us the
lender never received the check, and the check was voided and reissued to the lender and additional
insured.

On April 8, 2008, we received a letter from the additional insured advising there were additional damages
to the risk. We reinspected the risk for additional damages on April 25, 2008 and at that time, contacted
Daugherty Construction to go out and do temporary repairs to the roof to prevent further damages, which
had not been done prior to this date by the insured. The policy states under, *Conditions; Your Duties
After Loss, 5-A:* **In case of a loss to which this insurance may apply, you shall see that the following
duties are performed: the property from further damage, make reasonable and necessary repairs
required to protect the property, and keep an accurate record of repair expenditures.** The insured
never protected the property from further damages. However, the temporary repairs were completed the
following day after we contacted a contractor. Based on the reinspection of the additional damages, we
completed a supplement estimate in the amount of $1,534.89 although; the additional damages could have

Exhibit "C"

been prevented had the additional insured protected the property from additional damages immediately after the initial loss to the roof. A supplement check was issued in the amount of $1,510.20 and mailed to the lender, HFC.

Therefore, based on the above information, we feel the additional insured has completely been compensated for any and all damages from the wind and water damage to the risk. The additional insured and his family continued to reside at the risk throughout our initial and reinspection of the risk.

If you have any questions, please do not hesitate to contact us. Please be sure to include the claim and/or policy number on any correspondence sent to us.

Best Regards,

Jeff Amos
Field Staff Adjuster
Assurant Specialty Property
866-853-8810 Office
866-728-7098 Fax


Enclosures:     Settlement Documents